Angela E. Sanders, Appellant in Pro Se, Nicole Lynn Glowen, Counsel for Appalese, Faith Servicing LLC, and U.S. Bank Trust. All right. Ms. Sanders, we can't see you, Ms. Glowen. There we go. All right. Thank you. Ms. Sanders, so you'll have 15 minutes. Do you want to reserve any time for rebuttal? Yes, Your Honor. I would like to reserve five minutes for rebuttal. All right. Thank you very much. You may begin. Okay. Good morning, Your Honors. My name is Angela Sanders, Appellant Pro Se Litigant Debtor. Your Honors, I stand before you today to address significant legal errors and factual misunderstandings made by the lower court in its decision regarding my confirmed Chapter 13 plan, the CARES Act forbearance, and the issues surrounding the chain of title and standing of the appellees to enforce post-petition payments. The confirmed plan and res judicata. First and foremost, the confirmed plan is binding and res judicata. As stated in Section 5.03 and Section 2.04B of the plan, my post-petition payments are explicitly governed by the CARES Act in conjunction with applicable state and federal laws. This provision was incorporated into my plan when it was modified and confirmed. The only authority governing my post-petition payments is the confirmed Chapter 13 plan, not the unsubstantiated notices filed by the appellees. Freddie Mac guidelines govern post-petition payments. As Freddie Mac was the owner of my loan at the time I requested and received my COVID-19 forbearance in July 2020, Freddie Mac guidelines and FHFA regulations govern the forbearance and subsequent, excuse me, repayment. These guidelines provided me the right to exit strategies, such as repayment plans, deferrals, and other relief options. I was not required to make a lump-sum payment of post-petition amounts at the conclusion of the plan, as the court incorrectly suggested, and that also goes for the forborn payments. Misapplication of petition and post-petition payments. The appellees misapplied both pre-petition and post-petition payments, violating Section 2.04B of the plan. Pre-petition arrears payments must be applied to arrears, and post-petition payments must follow the amortization schedule. Instead, they servicing wrongly applied payments across the account without maintaining separate accounts for pre-petition and post-petition arrears. This misapplication directly affects the arrears balance and the overall payment calculations, which the court failed to address, creating material errors. Ms. Sanders, can I interrupt you just for one second, and I apologize for that? The clock on our screen is not counting down. I just want to let the court deputy know that. Our clock hasn't started, so we do not know how much time remains. All right. Go ahead, Ms. Sanders. Okay. Thank you, Your Honor. The misinterpretation of the CARES Act and Freddie Mac guidelines. This is the next section. The court misunderstood the role of Freddie Mac guidelines. The CARES Act does not stand alone. It is supported by the Freddie Mac guidelines that govern how federally-backed loans are serviced. The CARES Act protections provided by the FHA and Freddie Mac are conditioned on the start date, pendency, and duration of the forbearance. These guidelines outline the exit strategies servicers must offer to borrowers upon the conclusion of the forbearance, such as repayment plans, loan modification, et cetera, or deferrals. The importance of the start date. The start date of my COVID-19 forbearance is critical. Contrary to the court's assertion that the start date does not matter, it absolutely does, because the Freddie Mac and CARES Act guidelines require strict adherence to the forbearance timeline. The court ignored this crucial fact, despite it being explicitly stated in my confirmed plan. The forbearance period began on July 10, 2020, and lasted 12 months, making the Appleby's statements regarding an earlier end incorrect. Next, misapplication of a homeowner assistance funds, HAAF and Freddie Mac guidelines. Freddie Mac guidelines on HAAF funds. According to Freddie Mac guidelines, particularly Section 9212.1, mortgage assistance funds received from a state or local program, such as the California Mortgage Relief Program, they must be treated as if they were from the borrower. Servicers are required to apply those funds to the loan as if the borrower had made the payment themselves, in accordance with the security instrument Freddie Mac guide and applicable law. Faith Servicing's rejection of HAAF funds in this case. Faith Servicing improperly reversed the HAAF funds without informing me of its action. The program itself confirmed the funds were sent on my behalf and applied to my account. Faith Servicing's claim that I was ineligible due to an escrow shortage and their assertion of a prior loan modification were false. The Freddie Mac guidelines clearly state that servicers must accept these funds and apply them appropriately, which Faith Servicing failed to do. This error was exacerbated when the court did not acknowledge this misapplication despite the evidence I provided. Next, reinstatement options under Freddie Mac guidelines. Full and partial reinstatement. As further outlined in Freddie Mac guidelines, section 9203.3 through 9203.7, borrowers are entitled to reinstatement options upon the completion of forbearance, including both full and partial reinstatement. A full reinstatement would require payment of the entire delinquent amount, while a partial reinstatement would allow the borrower to make at least one full monthly payment and be placed on a repayment plan. Freddie Mac reinstatement guidelines. For full reinstatement, the servicer must not charge or collect any legal costs or fees unless permitted by law. And these fees must comply with Exhibit 57A of Freddie Mac's approved attorney's fees. For partial reinstatement, the servicer should offer a repayment plan to cure the remaining delinquent amount while suspending foreclosure proceedings. Application to my case. Under these guidelines, Faith Servicing should have offered me a repayment plan or loan deferral option to address the delinquency, particularly since the California Mortgage Relief Program funds were rejected without just cause. Freddie Mac guidelines prohibit the servicer from charging attorney's fees or foreclosure costs during the forbearance period, yet they continue to do so, compounding the errors in this case. Next, failure to address objections and factual discrepancies. Court error. The court ignored my objections to the claims made by Faith Servicing about my forbearance exit strategy and the application of half funds. These objections were grounded in the federal rules of evidence and should have been fully addressed. Inconsistent claims by Faith Servicing. The court accepted Faith Servicing's version of events without considering the evidence I presented regarding the misapplication of forbearance dates, improper fees, and failure of Faith Servicing to offer the Freddie Mac approved exit strategies. The court also ignored my objections to Faith Servicing's reversal of half funds, which contradicted the program's approval status and its own records as demonstrated by the evidence I provided. Next, chain of title and standing issues. Faith Servicing has no standing, and this includes U.S. Bank, to enforce the note or claim post-petition payments because it never amended the proof of claim following the transfer from specialized loan servicing. According to the bankruptcy code and rules, when a claim is transferred, the new servicer must amend the proof of claim to reflect its interest. Since Faith Servicing failed to do so, and U.S. Bank trusts, the right to file a supplemental claim or respond to the notice of final cure payment remains in the name of specialized loan servicing, leaving Faith Servicing without standing. Additionally, there are two conflicting versions of the promissory note in the record. One endorsed in blank, and one with a special endorsement to specialized loan servicing, and then endorsed in blank. So it was in, okay. This discrepancy directly impacts the chain of title and the right to enforce the note on an issue that the court ignored. As stated, the misapplication of the payments and the two versions of the note create material facts in dispute, which the court failed to address. In conclusion, the court made several material errors by failing to recognize the binding nature of my confirmed plan, misinterpreting the CARES Act and Freddie Mac guidelines, denying proper discovery, and ignoring the standing and chain of title issues raised by the conflicting evidence. The post-petition payments, foreborn payments, and exit strategies should have been governed by Freddie Mac guidelines. They have to be, as outlined in my confirmed plan, and the court's failure to address these issues resulted in a miscarriage of justice. I respectfully request that the decision of the lower court be reversed or remanded for further proceedings in light of these errors, and I would like to reserve the balance of my time. Thank you, Your Honors. Thank you, Ms. Sanders. Thank you. Ms. Glowen. Good afternoon, Your Honors. May it please the Court, Nicole Glowen for the appellees. The issue on this appeal is very narrow and very simple. We are here on an issue of final cure, which is a simple issue of whether post-petition payments were or were not made. Ms. Sanders has provided several theories on why she claims that she has submitted more payments than were in the post-petition payment accounting provided, and they specifically relate to forbearance and her half-fund application. With respect to her forbearance arguments, there is no dispute anywhere in her briefings or even on this argument on appeal that the forbearance period has now ended. The course on this provided to Ms. Sanders following the termination of her forbearance clearly indicated that she would be required to pay the sums that were foreborne and that she could contact the lender to discuss her various repayment options in accordance with all of the federal guidelines and hints on how these issues should be handled. Ms. Sanders has never to date contacted the lender to exercise those options, and there's nothing in any of the Freddie Mac guidelines, statutory or otherwise, that require a lender to immediately offer options without application and further discussion. And there is no dispute anywhere in the record that the forbearance period ended and that those payments were not made and retunded in any way by Ms. Sanders. With respect to her half application, while there were some issues that occurred in the communications concerning the application, Ms. Sanders doesn't dispute anywhere in the record that the half funds were returned, and the half funds were required to be returned because the half funds are governed by the California government program and agency solely. The lender cannot make a unilateral decision to keep and apply funds when the government agency provides specific instructions as the controller of the program to return those funds. And while those funds were tendered and were applied and found to be short, they were then unapplied and sent back per the requirements of the California Housing Finance Agency, and the lender would have no, absolute no discretion to change that, keep that, or do otherwise, based on how that program is set up. While Ms. Sanders may have other remedies or issues that she thinks wrongdoings related to this case, those matters can be prosecuted outside in the state court or otherwise and are not proper to be considered or prosecuted within the narrow purview and issue of final cure. Throughout the final cure proceedings, there were several opportunities for Ms. Sanders to provide briefing, including evidence of additional payments, and she failed to do so. There was never a time where she provided proof of additional payments, and, in fact, she hasn't made a payment since October of 2018. The loan is severely post-petition delinquent, and while she has made her best effort at trying to cure some of these arrearages, the fact remains that those amounts have not been paid, there has not been a final cure, and the court correctly concluded that there was no triable issue of fact that those payments hadn't been made, both on the MSJ and on the reconsideration request because Ms. Sanders was making the same arguments that she made during the motion for summary judgment proceeding on reconsideration. I don't have any further argument or anything to add to my briefing. If the court has questions for me, I'm happy to answer them, but I feel like this is a very straightforward issue and narrow issue as I discussed. But we can't hear you again, Julie, for some reason. I don't, yeah. No. Now we can again. Now? All right. I'm getting as close to my computer as I possibly can. Ms. Glowen, so I just want to confirm, you know, it's your position that these other issues, which are certainly concerning about the fact that there's just been a lot of confusion viewing it in the best light for the creditor as to what the amount owing is and, you know, and errors regarding kind of, as Judge Novak said, whipsawing the debtor with respect to the half funds, you know, surprising her, basically, that the amount necessary to cure was greater than $80,000, that those really don't go to the issue that the court had to decide and that we are facing today, which is, you know, what is the correct cure amount? Is that correct? Yes, Your Honor. And so it's your position that any other claims that she might have with respect to those issues or something that would not be treated in this type of proceeding? Yes, Your Honor. All right. All right. Thank you. Does anybody else have any questions? I don't. Thank you. All right. Thank you, Ms. Glowen. Ms. Sanders, you have some time left. Yes, thank you, Your Honor. The issue with the COVID-19 forbearance is that it is under the CARES Act. It is not related or consistent. It is under the CARES Act. And initially when FACE Servicing took over the loan and started servicing the loan, they sent me a For Debt Collections Practices Act validation notice, where they demanded that I validate the debt in 30 days. And that was in January of 2021. Next, so I contacted them and I gave them the dates for my forbearance, which is, as I stated, it's in the confirmed Chapter 13 plan, which is binding on all parties, case law party, in party. Ms. Sanders. Yes, Your Honor. But isn't that forbearance period, hasn't that expired? Well, the problem with that is. Just yes or no. Isn't it correct that it has expired? The forbearance period was extended by FEDOMAC guidelines to the end of December of 2021. However, the plan states that post-petition, and I have the provision right here. What's right here? Okay. It says here, the debtor has requested and received a 12-month COVID-19 mortgage forbearance as a Coronavirus Aid Relief and Economic Securities Act of the CARES Act, which started on July 10, 2020, and shall conclude 12 months following July 10, 2020. Therefore, the debtor is not required to make post-petition monthly mortgage home loan payments at this time. But the important part of this is post-petition monthly mortgage home loan payments shall only be tendered in accordance by law under the Coronavirus Aid Relief and Economic Security Act. And in conjunction with any other applicable state, federal laws and or upon the order of the court if required. And so, the post-petition payments from the point that the plan was confirmed, those payments were to be given a exit strategy. So, in essence, because they were only to be tendered under the CARES Act in conjunction with the Freddie Mac and FHA guidelines and some of the other guidelines that I had mentioned. The problem was that in June of 2021, I had contacted the servicer prior telling them that I was on a COVID-19 forbearance and I didn't understand where they were giving me this. Let me ask you another question, Ms. Sanders. Ms. Glowen made a statement as to when you made your last payment. When did you make your last payment? The payments that were made to... When did you make your last payment? $77,000 payment was made on my behalf and it's considered by Freddie Mac guidelines to be my payments made to the debtor. Okay. I know that's the payment that the bankruptcy judge talked about, the whipsaw relationship and so forth. But when was your last payment? Your Honor, respectfully, that was my last payment. What's the date? I'm not asking you what it was. What was the date of your last payment? The payment was made and applied to my account in June of 2022 for $77,000. It was applied to my account and then face servicing... Okay. Any other payments other than the half funds? Yes, I have a list of that, Your Honor. After that point in time? No. And the reason, Your Honor... The last payment was the half payment. Yes, Your Honor. And Your Honor, can I please add a crucial point? The crucial point is that on June 15, 2021, face servicing sent me a letter through the Consumer Protection Bureau where they specifically stated, please be advised that your loan is not a Freddie Mac loan, nor is it an FHA loan. Your loan is owned by a private investor and thus it does not qualify for CARES Act protections. As explained in the response sent to you on February 10, 2021, the prior servicer granted forbearance and they have the incorrect dates for the forbearance. They have the backdated version. As such, the forbearance has expired, which was not true because it hadn't expired at that point. And then they insist here, they tell me, as such, the forbearance has expired and a forbearance extension is not available per the investor's criteria. And then they tell me a copy of our previous response, et cetera, et cetera. But they tell me here, they specifically state that I cannot apply for an exit strategy under Freddie Mac guidelines, that I can only apply, as they stated here, they want me to fill out a borrower assistance, a borrower, excuse me, I'm sorry, a borrower assistance form along with any supporting documents necessary. A blank back is enclosed and it's telling me here that I will not get the exit strategies that I am supposed to receive under my Chapter 13 plan, and that I will only get, and they don't even tell me what it is, it says, they will review it and any further assistance options you must complete and return this, it will be based on the new investor's guidelines, which is not correct. Because when the, even though the loan was sold, they still have to honor the loss mitigation that was in place, because this loss mitigation was in place when Freddie Mac owned the loan. In addition to that, FHFA guidelines state that if you purchase a Freddie Mac loan, you have to continue to service the loan as if it was still owned by Freddie Mac. And so when they did that, they denied me of my exit strategy, and that was the problem, your honors. And so, does anyone have any questions? No, no, if you want to just make a final statement. Okay, I just wanted to add a couple of points until my time. Oh, it's almost out. Thank you, your honors. All right, thank you. This matter is submitted.
judges: Brand, Gan, and Corbit